

# THE ATTORNEY GENERAL
## OF TEXAS

Austin, Texas

Gerald C. Mann
ATTORNEY GENERAL

February 14, 1930

Hon. Holvey Williams
District Attorney
Waco, Texas

Dear Sir:

Opinion No. O-606
Re: Whether Commissioners' Court
has authority to construct and
pay for a county garage for ser-
vicing, housing and repair of
county road trucks, machinery
and equipment, and maintenance
thereof, out of the county-wide
road bond fund?

Your request for an opinion on the above stated
question has been received by this office. We thank you
for the excellent brief submitted with your inquiry which
has been of great assistance in passing upon your ques-
tion.

We quote from your brief as follows:

"McLennan County heretofore duly author-
ized the issuance of a series of County wide
road bonds for the purpose of 'construction,
maintenance and operation of macadamized,
graveled, or paved roads and turnpikes, or in
aid thereof.'

"These bonds were duly marketed and the
proceeds placed to the credit of the County
wide bond fund and utilized in accordance with
the foregoing purpose for the construction of
County wide roads and the purchase of right of
way therefor, together with other usual inci-
dents.

"There now remains in said bond fund ap-
proximately $40,000.00, a portion of which,
approximating $10,000.00, is desired to be

used for the purpose of constructing a County garage, which garage will be used for the purpose of housing servicing and repairing machinery, equipment, trucks, tractors, etc., which machinery and equipment are used in the maintenance, repair and operation of the McLennan County road system."

The Constitution Article 3, Section 52, reads, in part, as follows:

"...that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State, or any defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:..."

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Article 8, Section 9 of the State Constitution reads as follows:

"The State tax on property, exclusive of the tax necessary to pay the public debt, and

of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five cents for city or county purposes, and not exceeding fifteen cents for roads and bridges, and not exceeding fifteen cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment September 25th, 1883; and for the erection of public buildings, streets, sewers, water works and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and the Legislature may also authorise an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax-paying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

Sections 4, 6 and 16 of Article 2351, R. C. S. 1925, defining the powers of the Commissioners' Court authorises such court to:

"Sec. 4. Build bridges and keep them in repair.

"Sec. 6. Exercise general control over all roads, highways, ferries, and bridges in their county.

"Sec. 16. Said court shall have all such other powers and jurisdiction, and shall perform all such other duties as are now or may hereafter be prescribed by law.

The bonds in question were originally issued under the authority of the Articles 726-738, these statutes being in full force and effect at the time of the issuance of these bonds at and in conformity to these statutory provisions, prior to repeal by acts of the 39th Legislature, First Called Session, page 83, Chapter 16.

Prior to repeal, Article 726, R. C. S. provided:

"For the purpose of constructing, maintaining, and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof, and county, political subdivision or defined district of any county is authorized to issue its bonds, or otherwise lend its credit.. .....and to levy and collect taxes to pay the interest upon such bonds and provide a sinking fund for their redemption."

McLennan County is specially exempt from the provisions of subdivision 3 of title 116, chapter 3, under the provisions of Article 6761, R. C. S., 1925.

Sections 10 and 11 of the McLennan County Special Road Law, chapter 34, page 70, Acts of the 41st Legislature, First Called Session, read, in part, as follows:

"Sec. 10. Each county commissioners of McLennan County shall be ex-officio road commissioner of his respective districts and under the direction of the Commissioners' Court shall have charge of all the teams, tools and machinery, belonging to the county....

"Sec. 11. The Commissioners' Court shall have power to purchase such teams, tools, and machinery, as may be necessary for the working of said road...."

Article 6720, R. C. S., 1925, reads as follows:

"The Commissioners' Court shall see that the road and bridge fund of their county is judiciously and equitably expended on the roads and bridges of their county, and as nearly as

the condition and necessity of the roads will permit, it shall be expended in each Commissioners' precinct in proportion to the amount collected in such precinct. Money used in building permanent roads shall first be used on only first or second class roads, and on those which shall have the right of way furnished free of cost to make as straight a road as is practicable and having the greatest bonus offered by the citizens of money, labor and other property."

This article refers only to the road and bridge fund of the county and is not applicable here.

Article 6762, R. S. S., 1925, reads, in part, as follows:

"In all counties of this State, as shown by the preceding Federal Census to contain as many as forty thousand inhabitants, the members of the Commissioners' Court shall be ex-officio road commissioners of their respective precincts and under the direction of the Commissioners' Court shall have charge of the teams, tools and machinery belonging to the county and placed in their hands by said court."

Article 1630, R. C. S., 1925, reads as follows:

"The Commissioners' Court, by an order to that effect, may transfer the money in hand from one fund to another, as it may deem necessary and proper, except that the funds which belong to class first shall never be diverted from the payment of the claims registered in class first, unless there is an excess of such funds."

This article provides for the transfer of county funds. However, the question involved here is not one involving a transfer of funds, and the effect that the proposed expenditure would not constitute a transfer of such funds either directly or indirectly.

The reason for this rule is predicated upon the fact that the authorization provided by Article 1630 only applies to statutory funds and does not embrace any of the five classes of county funds designated in Section 9, Article 8 of the State Constitution.

The constitutional provision above cited constitutes a mandate to the Commissioners' Court to maintain the public roads and in interpreting the intention of the Legislature and in construing said constitutional provision, it should be noted that specific authority is afforded both by the general statute and by the special road law for McLennan County to purchase equipment in the nature of machinery, tools, etc., and that as a corollary thereto it is made the duty of the Commissioners' Court to have custody and control over such machinery and equipment. In the absence of any inhibition, it must be construed to be the intention of the Legislature and the pertinent constitutional direction that the tools, equipment and machinery, including automobiles, tractors, etc., be maintained, repaired and cared for in such manner as is necessary, consistent with the maintenance of such public roads.

Naturally, this leads to a construction of the word "maintenance" as used in the applicable statutory and constitutional provisions. Our appellate courts have definitely ascribed to the word "maintenance" the broadest possible meaning.

"The Supreme Court in the case of Dallas County vs. Plowman, 99 Tex. 509, 91 S. W. 221, 222, afforded the earliest definite construction of the term, as used in Art. 8, Sec. 9 of the constitution, when it said:

'It was added by amendment in the year 1890 for the evident purpose of conferring upon Counties the power to lay out, construct, and maintain better systems of public highways than they were able to do under the restricted taxation before provided... and it could not have been the intention thus to restrict the use of the

fund and to create such confusion and
embarrassment in the handling and
disbursement of the funds of the Coun-
ty as would arise from such construc-
tion. The purpose of the Legislature
in making the amendment was to increase
the capacity of the County to maintain
a system of public roads, and the word
'maintenance' must be held to include
all of the things necessary to be done
to accomplish that purpose.'

"Effect must be given to the construction
placed on the word by the Supreme Court as
meaning all things necessary to accomplish the
purpose of maintenance of public roads in the
County. It would be folly to assume that the
Legislature would give authority and direction
to the Commissioners court to acquire machin-
ery and equipment for the working, operation,
maintenance and repair of public roads and at
the same time withhold from the Commissioners
Court the power to properly house, care for,
service, repair and maintain such equipment,
which is necessary to the duty of maintaining
such roads.

"The Court of Civil Appeals at Waco, speak-
ing through Justice Alexander in the case of
Crow v. Tinner, 47 S. W. (2d) 391, in 1932,
followed strictly the foregoing construction
of the word 'maintenance' by holding:

'We must first ascertain what
is meant by maintenance of roads...
The phrase has a broader meaning and
includes the doing of everything
necessarily and appropriately con-
nected with and incidental to the
laying out, opening and construction
of public roads and the maintenance
of an efficient road system.'

"The Supreme Court considered this opinion so decisive of the question involved that it adopted Justice Alexander's opinion verbatim in Tinner v. Crow, 78 S. W. (2d) 588.

"In this connection we call attention also to the case of Brown v. Graham, 58 Tex. 254.

"As further evidence of the broad meaning to be ascribed to the term 'maintenance' the Federal Court, in the case of Hanly v. Johnson, 51 Fed. (2d) 809, 813 said with reference to said term as used in the cited Constitutional provision:

'We do not think the word 'maintenance' as used in this section of the Constitution was intended to be used in the restricted sense. By the use of the words 'maintenance' of public roads and highways' the framers of the Constitution had reference to the maintenance of a system of public roads and highways which would include all necessary powers to provide and keep up a system of highways.'"

The case of Austin Bros. v. Patton, 238 S. W. 182-188 held that the county commissioners' court was authorized to exercise all the acts and to do all the things which were necessarily and appropriately connected with or incidental and subsidiary to the maintenance of public roads.

There is no decided case which we have been able to find which either directly or inferently prohibits the use of the county road bond fund for the construction of such a necessary attribute of the public road system as the construction of a county garage for the purpose of servicing, housing and repairing county road equipment.

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this Department that the Commissioners' Court of McLennan County, may at its discretion, by an order entered upon the minutes of said court, authorize the erection and construction of a county garage to be used for the housing, maintenance, repair and serving of county road equipment which is used for the maintenance of the county road system and is further authorized to pay therefor out of the county wide road bond fund.

Trusting that the foregoing answers your inquiry, we remain

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:AW/mm

APPROVED:

ATTORNEY GENERAL OF TEXAS